***********
The undersigned have reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Taylor. The appealing party has shown good grounds to reconsider the evidence; therefore, the Full Commission REVERSES the holding of the Deputy Commissioner and enters the following Opinion and Award.
 ***********
The undersigned finds as fact and concludes as matters of law the following which were entered into by the parties in a Pre-Trial Agreement and at the hearing before the Deputy Commissioner as:
 STIPULATIONS
1. The employee-employer relationship existed at the time of the alleged incident.
2. The employer, Duke University, was self-insured at the time of the alleged incident.
3. The date of the alleged injury was November 24, 1999.
4. The parties were subject the North Carolina Workers' Compensation Act at the time of the alleged incident, the employer employing the requisite number of employees to be bound under the provisions of said Act.
5. The average weekly wage of plaintiff is $488.21.
6. The parties stipulated into evidence as Stipulated Exhibit 1, a packet of Industrial Commission forms.
7. The parties stipulated into evidence as Stipulated Exhibit 2, a May 9, 2001 letter from Kelly Williams, claims specialist, to Robert T. Perry and two letters from Robert T. Perry to Kelly Williams dated May 18, 2001 and July 18, 2001.
8. The depositions of Richard Bruch, M.D. and Carol Epling, M.D., MSPH are a part of the evidentiary record in this case.
 ***********
Based upon the evidence of record, the Full Commission makes the following:
 FINDINGS OF FACT
1. At the time of the deputy commissioner hearing in this matter, plaintiff was fifty-two (52) years old. Plaintiff stopped attending school in the ninth grade and his lifetime work experience primarily consists of physical labor jobs. Plaintiff became employed with Duke University in 1971 as a utility worker.
2. Plaintiff's job with defendant required that he perform janitorial duties in Carr Gym at Duke University. The job duties which plaintiff performed were described by plaintiff and are also found in Plaintiff's Exhibit #3. Plaintiff's job duties included dust mop and damp mopping, restrooms, locker rooms and hallways, vacuuming, removing trash, wiping benches and locker rooms, lobbies, equipment rooms and the gym floor. Plaintiff also cleaned a classroom, stairwell and landing. Plaintiff's equipment was located on each floor. Plaintiff used dust mops, wet mops, brooms, wet vac, vacuum cleaner, cleaning chemicals and dust cloths.
3. Plaintiff suffers from poorly controlled Type II diabetes mellitus and has had complications from epilepsy in the past. Plaintiff also takes medication for depression. Plaintiff suffered a right knee injury as a child which resulted in his right leg being shorter than his left leg.
4. On November 24, 1999, plaintiff was walking down a set of stairs and fell as he was coming out of Cameron Indoor Stadium in the course of his employment. Plaintiff severely injured his right knee and was ultimately diagnosed with an acute right quadriceps tendon rupture. Plaintiff did not return to work on November 24, 1999 following his injury.
5. Defendant accepted plaintiff's right knee injury as compensable and paid paying plaintiff temporary total disability compensation at a rate of $322.91 per week pursuant to a Form 60, Employer's Admission of Employee's Right to Compensation, dated April 28, 2000.
6. On December 6, 1999, plaintiff underwent a quadriceps tendon repair performed by orthopedic surgeon Dr. Lawrence Higgins with Duke University Sports Medicine. Following his surgery, plaintiff began using a cane due to right leg weakness to ensure he did not fall. Subsequently, on July 18, 2000, Dr. Higgins examined plaintiff and opined that he was at maximum medical improvement and retained a ten percent (10%) permanent partial impairment of his right knee. The Full Commission gives little weight to Dr. Higgins opinion because he has not recently seen plaintiff and is therefore unable to take into account plaintiff's ongoing right knee and quadriceps conditions in rendering his opinions.
7. On April 11, 2000, Dr. Higgins released plaintiff to return to light duty work for four weeks with a transition to full duty thereafter and continued physical therapy. Duke Employee Occupational Health and Wellness (EOHW) has since directed plaintiff's medical treatment for his compensable injury.
8. On April 14, 2000, plaintiff returned to EOHW and visited with Jim Schmidt, P.A. Plaintiff did not feel he was capable of returning to work on this date and voiced concern regarding potential future injury to his knee. Since Dr. Higgins had not approved a specific job description for plaintiff, Mr. Schmidt authorized plaintiff out of work for two additional weeks and directed plaintiff to continue participating in physical therapy.
9. Plaintiff returned to work with restrictions on May 1, 2000. Defendant did not allow plaintiff to work with his cane. Plaintiff attempted to work without his cane, but fell twice without it. Plaintiff stated at his May 15, 2000 visit with Mr. Schmidt that he could not walk without using his cane because his knee tends to buckle.
10. On May 18, 2000, plaintiff visited Dr. Carol Epling at EOHW. Dr. Epling felt plaintiff would benefit from further physical therapy at Southwind Spine Rehabilitation Center to help condition him to return to work due to his ongoing knee weakness and dependency on his cane for stability while walking. Dr. Epling completely removed plaintiff from work pending his participation in continued physical therapy.
11. On May 23, 2000, plaintiff began participating in a work transition program at Southwind Center in accordance with Dr. Epling's recommendation. Plaintiff attempted to participate in the physical therapy program's activities without the use of his cane; however, plaintiff continued complaining about right leg weakness which contributed to his continuing near falls.
12. With the intent of continuing physical therapy treatments each day, plaintiff attempted to return to work on July 10, 2000 with the restrictions of working only four hours per day, no squatting or kneeling, occasionally lifting up to twenty pounds from two feet to shoulder height and no carrying items on the stairs. Due to increased knee pain following his four hour work shifts, plaintiff was unable to attend physical therapy thereafter each day. Thus, Dr. Epling revised plaintiff's work restrictions to provide that he work four hours per day, three days per week and attend physical therapy the other two days. Plaintiff was also using his cane at work to ensure he did not fall while performing his limited duties, but his manager saw this as unworkable.
13. Dr. Epling determined at plaintiff's August 1, 2000 visit that the work provided by defendant was beyond his limited duty work restrictions. Plaintiff was being asked to use a leaf blower to blow off several tennis courts and the item was heavier than twenty (20) pounds. Following plaintiff's unsuccessful trial return to work, Dr. Epling returned plaintiff to Southwind Center for continued physical therapy five days per week focusing on strengthening plaintiff's right knee so that he could return to work without his cane.
14. On September 14, 2000, Dr. Epling's treatment notes of plaintiff's visit indicate that plaintiff had attempted to walk and function without his cane but incurred increased pain when he did not use his cane. Dr. Epling also ordered a functional capacity evaluation (FCE) to be conducted by Southwind Center to determine plaintiff's updated work restrictions.
15. On September 28, 2000, Dr. Epling issued plaintiff the following work restrictions for plaintiff upon assessment of the Functional Capacity Evaluation performed by Southwind Center: may not carry equipment up or down stairs; may not kneel or squat for work activities; avoid prolonged walking for more than fifteen minutes at a time; vary activities, may alternate with standing, walking and seated work; may sweep and blow off tennis courts; may begin with four hours per shift and progress to full time incrementally; may lift, pull and push up to twenty (20) pounds, must have assistance with lifting twenty (20) to forty (40) pounds, no lifting greater than forty (40) pounds.
16. On October 10, 2000, Dr. Epling issued an additional restriction that plaintiff may have a cane with him at work, but he may not use it during work activities as previously written on September 28, 2000.
17. Despite plaintiff's efforts during his nearly five month course of physical therapy, plaintiff was unable to rehabilitate his leg so as to comfortably enable him to discard his cane while performing the light duty work approved by Dr. Epling. Thus, plaintiff reported to work on October 12, 2000, but refused to attempt to perform any of the assigned activities without using his cane due to his fear of falling. At that time, plaintiff was sent home by defendant. Plaintiff returned to Dr. Epling on October 19, 2000 and reported no significant change in his chronic knee symptoms.
18. On November 6, 2000, plaintiff was sent a memorandum from housekeeping supervisor Michelle Logan indicating that defendant-employer was willing to accommodate him with a position that was within Dr. Epling's restrictions. This memorandum emphasized that it was permissible for plaintiff to have a cane at work, but plaintiff was not permitted to use the cane with the listed work activities. Plaintiff was also advised in this memorandum that if he did not return to work on or before November 13, 2000 or provide a doctor's statement taking him out of work, his employment would be terminated. Defendant subsequently terminated plaintiff on November 13, 2000.
19. On November 13, 2000, defendant filed a Form 24, Motion to Terminate or Suspend Payment of Compensation, because plaintiff unjustifiably refused suitable employment. On December 11, 2000, Special Deputy Commissioner Gina Cammarano filed an Order granting defendant's motion to suspend payment of benefits to plaintiff until he ceased his refusal to work.
20. On April 27, 2001, Dr. Richard F. Bruch, orthopedic surgeon with Triangle Orthopedic Associates examined plaintiff. Dr. Bruch opined that plaintiff retained a fifteen percent (15%) permanent partial impairment rating to his lower right leg. Dr. Bruch also opined taking into consideration plaintiff's medical records and physical exam of plaintiff's decreased right quadriceps muscle mass that he was more likely to fall than someone who had normal quadriceps muscle function and tone and that plaintiff's use of a cane was appropriate at home, in public, and the workplace.
21. Based upon the greater weight of the medical evidence and plaintiff's testimony, the Full Commission finds that it was medically necessary for plaintiff to use his cane at all times due to his high risk of falling. Plaintiff had fallen previously on four occasions in the past. Plaintiff's medical records indicate plaintiff's legs are significantly different in size, plaintiff has a significant painful type limp, and plaintiff still suffers from aching pain beneath his kneecap. Plaintiff also suffers from diabetes and resultant fatigue due to this condition. Thus, the Full Commission finds that plaintiff's preexisting shorter leg condition, right leg atrophy, and impairment of the quadriceps muscle following his compensable injury combined with his other debilitating physical conditions renders plaintiff's desire to use his case while in the performance of his job at all times completely justifiable. Therefore, plaintiff's refusal to return to work without being allowed to use his cane while performing all job duties in October 2000 did not constitute a constructive refusal to return to work.
22. Plaintiff sustained an admittedly compensable injury by accident to his right knee and leg for which he received temporary total disability benefits from November 24, 1999 through November 13, 2000.
23. Defendant-employer failed to offer plaintiff a job that was within his restrictions and that he was physically able to perform. The job offered by defendant to plaintiff was unsuitable as he was not allowed to perform his job duties safely while using his medically necessary cane; therefore, plaintiff has not constructively refused suitable employment without justification. Defendant's Form 24 Application was improvidently approved and plaintiff continues to be totally disabled due to his compensable right knee and leg conditions also taking into account his age, education, and prior work experience.
24. Plaintiff is at maximum medical improvement and retains a fifteen percent (15%) permanent partial impairment of his right leg. Plaintiff is physically capable of returning to work in suitable employment in accordance with the permanent work restrictions assigned by Dr. Epling with the addition that plaintiff be allowed to use his cane at all times while working.
 ***********
Based upon the findings of fact, the Full Commission makes the following:
 CONCLUSIONS OF LAW
1. On October 10, 2000, defendant-employer offered plaintiff a job he was physically unable to perform. Plaintiff did not constructively refuse suitable employment without justification when he refused to attempt the job offered by defendant without the use of his cane. N.C.G.S. § 97-32.
2. Plaintiff remains currently disabled due to his age, education, permanent work restrictions, and medical necessity of using his cane while performing his job; therefore, plaintiff is entitled to receive continuing total disability compensation from November 13, 2000 and continuing until further Order of the Commission. N.C.G.S. § 97-29.
3. Plaintiff is entitled to all medical treatment reasonably intended to effect a cure, reduce his symptoms or lessen his period of disability as long as the same is related to his compensable injury. N.C.G.S. §97-25.
4. Plaintiff's counsel is entitled to receive a reasonable attorney's fee in the amount of twenty-five percent (25%) of the compensation awarded plaintiff herein. N.C.G.S. § 97-90.
 ***********
Based on the foregoing findings of fact and conclusions of law, the Full Commission REVERSES the holding of Deputy Commissioner Taylor and enters the following:
 AWARD
1. For his continuing total disability, defendant shall plaintiff compensation at the rate of $325.49 per week beginning November 13, 2000 and continuing until further Order of the Commission. This amount shall be paid in a lump sum subject an attorney's fee approved below.
2. Defendant shall provide all medical treatment related to plaintiff's compensable injury as long as the same is reasonably necessary to effect a cure, give relief, or lessen plaintiff's period of disability.
3. A reasonable attorney's fee in the amount of twenty-five percent (25%) of the compensation awarded plaintiff is hereby approved for plaintiff's counsel. This amount shall be deducted from the lump sum due plaintiff and paid directly to plaintiff's counsel. Thereafter, every fourth check shall be payable directly to plaintiff's counsel.
4. Defendant shall pay the costs, including an expert witness fee for Dr. Burch in the amount of $325.00 if not already paid.
This the ___ day of September 2003.
 S/____________ BUCK LATTIMORE CHAIRMAN
CONCURRING:
 S/___________________ BERNADINE S. BALLANCE COMMISSIONER
 S/_______________ CHRISTOPHER SCOTT COMMISSIONER